United States District Court
Southern District of New York
--------------------------------------------------------x
Coventry Enterprises LLC, a Delaware
Limited Liability Company,

Plaintiff,

V.

HEMP NATURALS, INC., a Florida corporation,
LEVI JACOBSON, a Florida citizen; AND
YOSEF BLEIER, a Florida citizen,

Defendants.
--------------------------------------------------------x

## **COMPLAINT**

Plaintiff, Coventry Enterprises LLC, a Delaware Limited Liability Company ("Plaintiff" or "Coventry"), by and through its attorneys, for its Complaint herein against Defendants, Hemp Naturals, Inc., a Florida corporation ("Hemp"), Levi Jacobson, a Florida citizen ("Jacobson"), and Yosef Bleier, a Florida citizen, ("Bleier" and, collectively, with Hemp and Jacobson, "Defendants") respectfully alleges:

## NATURE OF ACTION

1.     This action for money damages arises from Defendants' breach of four convertible promissory notes totaling more than $300,000[1] issued by Hemp; and for fraud in the inducement of the last three notes acquired by Plaintiff based on misrepresentations (express verbal misrepresentations by Defendants, and each of them, to Plaintiff that Hemp had no intention of filing a Form 15 and intentionally false promises that Hemp would not do so while the debt remained outstanding) that induced Plaintiff to purchase on or around March 18, 2019 a convertible promissory note for $100,000 issued directly by Hemp to Plaintiff; and two convertible promissory notes with balances owed of $68,643.40 and $81,795.29, totaling $150,342.69 purchased by Plaintiff from Power Up Lending Group, LLP, issued by Hemp, and sold and assigned to Plaintiff with Hemp's express knowledge and consent. These misrepresentations by the Defendants to Plaintiff were made just days before Hemp, on April 2, 2019, filed with the SEC its Form 15, revealing Defendants' deception and rendering the conversion feature of

---

[1] Plaintiff holds the following securities issued by Hemp: 1. Convertible Promissory Note issued February 15, 2019 by Hemp to Coventry for $50,000; 2. March 19, 2019 Convertible Promissory Note issued March 18, 2019 by Hemp to Coventry for $100,000; 3. Convertible Promissory Note issued October 1, 2018 by Hemp to Power Up Lending, LTD for $65,000 and sold by Power Up to Coventry March 19, 2019; and Convertible Promissory Note issued October 18, 2019 by Hemp to Power Up for $78,000 and sold by Power Up to Coventry on March 19, 2019.  See **Exhibits 1 through 11** attached hereto, inclusive.

the convertible promissory notes, rendering worthless those convertible promissory notes acquired days earlier based on such false statements and promises. Plaintiff is informed and believes that Defendants, and each of them, had already begun the process of considering and preparing with counsel the filing of that Form 15 and knew Hemp would be doing so before misrepresenting and falsely promising Plaintiff that they had no intention to do so and would not do so. Defendants, and each of them, intended that Plaintiff rely on such misrepresentations and false promises, and knew that Plaintiff would reasonably rely on such misrepresentations and promises in acquiring such securities and that Plaintiff would suffer the loss of such investments as a result of such reliance.

## **THE PARTIES**

2.     Plaintiff, Coventry, is a Delaware Limited Liability Company, with its principal offices located at 39 Broadway, Suite 920, New York, New York 10006. Coventry is not a citizen of Florida.

3.     Coventry has two members, Jack Bodenstein and Solomon Eisenberg. Jack Bodenstein is a resident and citizen of Michigan. Solomon Eisenberg is a resident and citizen of New York. None of the members of Coventry is a citizen of Florida.

4.     Coventry is informed and believes and based thereon alleges that Defendants are all citizens of Florida.

3

5.     Coventry is informed and believes and based thereon alleges that Defendant, Hemp Naturals, Inc., is a Florida corporation with its principal offices in Florida.

6.     Coventry is informed and believes and based thereon alleges that Defendant, Levi Jacobson, is a citizen of Florida.

7.     Coventry is informed and believes and based thereon alleges that Defendant, Yosef Bleier, is a citizen of Florida.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (violation of anti-fraud provisions of the federal securities laws) and 1332(a) (the action is between citizens of Delaware, Michigan and New York, for Plaintiff, and Florida, for Defendants, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs).

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) and (b)(3), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is the subject of the action is situated; and the District in which the parties agreed that the law and venue of this case would be litigated. Exhibits 1 and 4, ¶ 15; Exhibits 2 and 5, ¶5a.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

10.    On or around February 15, 2019, Hemp issued to Coventry a 10% Convertible Redeemable Note due February 15, 2020 (the "$50,000 Note"), pursuant to which Coventry loaned Hemp $50,000. A true and correct copy of the Convertible Note, Securities Purchase Agreement and bank records reflecting the loan transaction are attached hereto at **Exhibits 1, 2 and 3**, respectively.

11.    Between March 13, 2019 and March 18, 2019, Defendants Jacobson and Bleier had at least 9 telephone conversations, totaling 75 minutes, in which Bleier and Jacobson expressly misrepresented to Coventry's managing member, Jack Bodenstein, that Hemp had no intention to file a Form 15 and falsely promised and assured Bodenstein that Hemp would not to file a Form 15 while Coventry's convertible promissory notes were outstanding. During such calls, Bodenstein emphasized that because Hemp did not have cash and earnings sufficient to repay the loan, the value of any loans made to Hemp or purchased from Power Up would depend on Hemp's ability to keep current on its obligations with the SEC, so that its stock would be marketable to the public, and therefore if Hemp filed a Form 15 or intended to do so while Coventry's debt was outstanding, Coventry would not invest in Hemp. Bodenstein, Bleier and Jacobson discussed, understood and acknowledged that Hemp's filing of a Form 15 would render worthless the value of the Convertible Promissory Notes that Defendants solicited

Plaintiff to acquire, as well as the February 15, 2019 Convertible Promissory Note for $50,000 that Coventry already held. Defendants, in those calls, assured Bodenstein several times that Hemp had no intention to file a Form 15 and promised not to do so while Coventry's debt remained outstanding.

12.     Hemp, an insolvent company based on its own financial statements filed with the Securities and Exchange Commission ("SEC"), was not likely to be able to repay its noteholders, including Plaintiff, in cash, due to insufficient funds. Lenders would necessarily hope to profit from the conversion and sale of Hemp conversion shares, rather than based on the repayment in cash of interest accruing on the Convertible Promissory Note. Thus, the conversion feature of the convertible notes was and remains critical to its fair market value. Without that feature, Plaintiff is informed and believes, no lender would loan money to Hemp in 2019.

13.     On April 2, 2019, just days after making such misrepresentations, in reliance upon which Coventry invested $250,342.69 on Hemp convertible promissory notes on March 18, 2019. Jacobson signed and filed with the SEC HEMP's Form 15, titled CERTIFICATION AND NOTICE OF TERMINATION OF REGISTRATION UNDER SECTION 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934 OR SUSPENSION OF DUTY TO FILE REPORTS UNDER SECTIONS 13 AND 15(d) OF THE SECURITIES EXCHANGE ACT

OF 1934. A true and correct copy of the Form 15 filing is attached hereto at **Exhibit 12.**

14.     Defendants' Form 15 expressly notified the public that, among other things, Hemp would no longer maintain current financial reports with the SEC. The suspension of Hemp's statutory obligation to file reports under Sections 13 and 15(d) through its Form 15 had catastrophic consequences to the fair market value of Hemp's convertible promissory notes acquired by Plaintiff because it meant that convertible noteholders, in the near future, would be unable to sell shares into the public market under Rule 144 (17 CFR 230.144) and therefore would be unable to liquidate their investment. Hemp's stock price plummeted and its ability to raise capital based on convertible debt ended.

15.     Hemp's securities holders are reliant on Rule 144 to sell their Hemp securities because Hemp has not registered its common stock with the SEC. As a general rule, unless common stock has been registered, it cannot be sold. Securities Act of 1933, Section 5.

16.     The SEC Rule 144  provides the most common exemption to that registration requirement. Rule 144 provides, in relevant part:

> 1. If any person sells a non-exempt security to any other person, the sale must be registered unless an exemption can be found for the transaction.

2. Section 4(1) of the Securities Act provides one such exemption for a transaction "by a person other than an issuer, underwriter, or dealer." …

…Rule 144 creates a safe harbor from the Section 2(a)(11) definition of "underwriter." A person satisfying the applicable conditions of the Rule 144 safe harbor is deemed not to be engaged in a distribution of the securities and therefore not an underwriter of the securities for purposes of Section 2(a)(11). Therefore, such a person is deemed not to be an underwriter when determining whether a sale is eligible for the Section 4(1) exemption for "transactions by any person other than an issuer, underwriter, or dealer."

15.    Rule 144 defines a safe harbor in which investors are assured that they will not be considered underwriters, if certain conditions exist, including that the company has available to the public certain public information. The parameters of that requirement are set forth in subsection (c):

Current public information. Adequate current public information with respect to the issuer of the securities must be available. Such

information will be deemed to be available only if the applicable condition set forth in this paragraph is met:

(1) Reporting issuers. The issuer is, and **has been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of section 13 or 15(d) of the Exchange Act** and has:

(i) **Filed all required reports under section 13 or 15(d) of the Exchange Act, as applicable, during the 12 months preceding such sale** (or for such shorter period that the issuer was required to file such reports), other than Form 8-K reports (§ 249.308 of this chapter); and

(ii) Submitted electronically and posted on its corporate Web site, if any, every Interactive Data File (§ 232.11 of this chapter) required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter), during the 12 months preceding such sale (or for such shorter period that the issuer was required to submit and post such files); or

(2) Non-reporting Issuers. If the issuer is not subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, there is publicly available the information concerning the issuer

9

specified in paragraphs (a)(5)(i) to (xiv), inclusive, and paragraph

(a)(5)(xvi) of § 240.15c2-11 of this chapter, or, if the issuer is an

insurance company, the information specified in section

12(g)(2)(G)(i) of the Exchange Act (15 U.S.C. 78l (g)(2)(G)(i)).

Note to § 230.144(c). …

Emphasis added.

16.     To qualify for the all-important Rule 144 exemption, investors

must hold the securities for a statutory holding period, which in turn depends

on the issuer's compliance with applicable reporting requirements, as

detailed in subsection (d).

(d) Holding period for restricted securities. If the securities sold are

restricted securities, the following provisions apply:

(1) General rule.

(i) If the issuer of the securities is, and has been for a period of

**at least 90 days immediately before the sale**, subject to the

reporting requirements of section 13 or 15(d) of the Exchange

Act, **a minimum of six months must elapse between the later**

**of the date of the acquisition of the securities from the**

**issuer, or from an affiliate of the issuer, and any resale of**

**such securities in reliance on this section for the account of**

**either the acquiror or any subsequent holder of those**

**securities.**

(ii) If the issuer of the securities is not, or has not been for a

period of **at least 90 days immediately before the sale**, subject

to the reporting requirements of section 13 or 15(d) of the

Exchange Act, **a minimum of one year must elapse** between

the later of the date of the acquisition of the securities from the

issuer, or from an affiliate of the issuer, and any resale of such

securities in reliance on this section for the account of either the

acquiror or any subsequent holder of those securities.

17.     Accordingly, immediately upon filing the Form 15, Hemp caused the

requisite holding period to double, from six months to twelve months. Moreover,

because Hemp became non-current in its reporting thereafter, Hemp caused Rule

144 to become unavailable to Hemp's securities holders, including Plaintiff, at all.

18.     Because the value of such securities is dependent on the applicability

of Rule 144, Hemp's filing of the Form 15 and later failure to maintain current

status on its publicly available financial reporting, Hemp caused the securities sold

days earlier to Plaintiff to be rendered worthless.

## <u>FIRST CLAIM FOR RELIEF</u>

*Breach of Contract – $50,000 and $100,000 10% Convertible Redeemable Notes*

*Against Hemp Naturals, Inc*

19.     Plaintiff realleges paragraphs 1 through 18, inclusive.

20.     Hemp issued to Plaintiff, for good and valuable consideration, that 10% Convertible Redeemable Note due February 15, 2020, a true and correct copy of which is attached hereto at **Exhibit 1** (the "February 15, 2019 Note"), pursuant to the terms of that Securities Purchase Agreement dated as of February 15, 2019, a true and correct copy of which is attached hereto at **Exhibit 2**.

21.     Plaintiff complied with all of its obligations under that February 15, 2019 Note, except as excused by Hemp's breaches or waivers, including that Plaintiff transferred to Plaintiff and counsel, as instructed by Hemp, $50,000 in cash. A true and correct copy of the wire transfer instructions and bank records reflecting such transfers are attached hereto at **Exhibit 3.**

22.     Hemp issued to Plaintiff, for good and valuable consideration, that 10% Convertible Redeemable Note due March 18, 2020, a true and correct copy of which is attached hereto at **Exhibit 4** (the "March 18, 2019 Note"), pursuant to the terms of that Securities Purchase Agreement dated as of March 18, 2019, a true and correct copy of which is attached hereto at **Exhibit 5**.

23.    Plaintiff complied with all of its obligations under that March 18, 2019 Note, except as excused by Hemp's breaches or waivers, including that Plaintiff transferred to Plaintiff and counsel, as instructed by Hemp, $100,000 in cash. A true and correct copy of the wire transfer instructions and bank records reflecting such transfers are attached hereto at **Exhibit 6.**

24.    Hemp breached paragraphs 8(d) (became insolvent) and 8(m) ("The Company shall be delinquent in its periodic report filings with the Securities and Exchange Commission") of the February 15, 2019 Note and March 18, 2019 Note.

25.    Separately, Hemp breached its covenant set forth in paragraph 4b of the Securities Purchase Agreements accompanying both notes, which required Hemp to "comply in all respects with the Company's reporting, filing and other obligations under the bylaws or rules of the Financial Industry Regulatory Authority ("FINRA") and the OTC Markets or other exchanges on which Hemp stock is traded.

26.    Separately, by filing the Form 15 and failing to maintain current financial information as required for the application of Rule 144, Defendant, Hemp, violated its implied covenant of good faith and fair dealing in the February 15, 2019 Note, March 18, 2019 Note and the Securities Purchase Agreements accompanying such notes, which expressly contemplate the conversion of shares

into unregistered stock and the resale of such stock under Rule 144, by making such resale under Rule 144 unlawful.

27.     Hemp's breaches, as alleged herein, directly and proximately caused Plaintiff's damages, including the loss of the entire value of the Notes, including lost profits that, otherwise, would have been realized from the conversion and sale of conversion shares.

28.     Pursuant to paragraph 8 of the Notes, because the foregoing breaches were not cured within 5 days of the occurrence of such breaches, and each of them, and were not waived by Plaintiff, the Notes are considered immediately due and payable at the date of the breach, without presentment, demand, protest or further notice of any kind. Interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law. In addition, Plaintiff is entitled to an award, as the prevailing party, of Plaintiff's attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of this action.

## SECOND CLAIM FOR RELIEF

*Breach of Contract – $65,000 and $78,000 Convertible Promissory Notes*

*Against Hemp Naturals, Inc*

29.     Plaintiff realleges paragraphs 1 through 18, inclusive.

30.     Hemp issued to Power Up Lending Group, LLP, for good and valuable consideration, that Convertible Promissory Note dated October 1, 2019, a true and correct copy of which is attached hereto at **Exhibit 7** (the "October 1, 2018 Note"). Plaintiff purchased the October 1, 2018 Note, including principal and interest, from Power Up, with the express approval and consent of Hemp, pursuant to the terms of that Debt Purchase Agreement dated March 19, 2019, a true and correct copy of which is attached hereto at **Exhibit 8**. Thus, Hemp is obligated to Plaintiff, as assignee of Power Up's rights, to perform its obligations under the October 1, 2018 Note.

31.     Hemp issued to Power Up Lending Group, LLP, for good and valuable consideration, that Convertible Promissory Note dated October 18, 2019, a true and correct copy of which is attached hereto at **Exhibit 9** (the "October 18, 2018 Note"). Plaintiff purchased the October 18, 2018 Note from Power Up, with the express approval and consent of Hemp, pursuant to the terms of that Debt Purchase Agreement dated March 19, 2019, a true and correct copy of which is attached hereto at **Exhibit 10**. Thus, Hemp is obligated to Plaintiff, as assignee of Power Up's rights, to perform its obligations under the October 18, 2018 Note.

32.     Plaintiff is informed and believes and on that basis alleges that Power Up Lending Ltd. complied with all of its obligations under the October 1, 2018 Note and October 18, 2018 Note; and that Plaintiff complied with all of its

obligations under the Debt Purchase Agreements at **Exhibits 8 and 10**, except as excused by Hemp's breaches or waivers. Plaintiff transferred to counsel's trust account for purposes of closing the transactions on March 18, 2019, the full amount of the debt on such Notes, $150,342.69. A true and correct copy of the wire transfer instructions and bank records reflecting such transfers are attached hereto at **Exhibit 11.**

33.     Hemp breached paragraph 3.8 of the Notes when, on April 2, 2019, Hemp filed its Form 15, and thereby ceased to be subject to the reporting requirements of the Exchange Act; and thereafter breached paragraph 3.8 again by failing to comply with the reporting requirements of the Exchange Act. Plaintiff's counsel provided Hemp with notice of default on April 4, 2019. A true and correct copy of Plaintiff's counsel's demand letter is attached hereto at **Exhibit 12**.

34.     Separately, Hemp breached Paragraph 3.1 of the Notes by failing to pay the Notes, with interest, upon maturity.

35.     Article III of both the October 1, 2018 Note and October 18, 2018 Notes provides, in relevant part:

> Upon the occurrence and during the continuation of any Event of
> Default specified in Sections 3.1 (solely with respect to failure to
> pay the principal hereof or interest thereon when due on this Note
> or upon acceleration), … [and/or] 3.8 … the Note shall become

immediately due and payable and the Borrower shall pay to the

Holder, in full satisfaction of its obligations hereunder, an amount

equal to the greater of (i) 150% times the sum of (w) the then

outstanding principal amount of this Note plus (x) accrued and

unpaid interest on the unpaid principal amount of this Note to the

date of payment (the "Mandatory Prepayment Date") plus (y)

Default Interest, if any, on the amounts referred to in clauses (w)

and/or (x) plus (z) any amounts owed to the Holder pursuant to

Section 1.4(e) hereof (the then outstanding principal amount of this

Note to the date of payment plus the amounts referred to in clauses

(x), (y) and (z) shall collectively be known as the "Default

Amount") and all other amounts payable hereunder shall

immediately become due and payable, all without demand,

presentment or notice, all of which hereby are expressly waived,

together with all costs, including, without limitation, legal fees and

expenses, of collection….

36.    Separately, by filing the Form 15 and failing to maintain current

financial information as required for the application of Rule 144, Defendant,

Hemp, violated its implied covenant of good faith and fair dealing in all four notes

and related agreements, which expressly contemplate the conversion of shares into

unregistered stock and the resale of such stock under Rule 144, by making such resale under Rule 144 unlawful just days after 3 of the 4 notes were acquired.

37.     Hemp's breaches, as alleged herein, directly and proximately caused Plaintiff's damages, including the loss of the entire value of the notes, including lost profits that, otherwise, would have been realized from the conversion and sale of conversion shares.

## THIRD CLAIM FOR RELIEF

*Securities Fraud – Section 10(b) and Rule 10B-5*

*Against all Defendants*

38.     Plaintiff realleges paragraphs 1 through 18, inclusive.

39.     Plaintiff alleges that Defendants, and each of them, made the alleged material misrepresentations to Plaintiff, as detailed above.

40.     Plaintiff alleges that Defendants, and each of them, made such misrepresentations purposefully as part of a scheme to mislead and defraud Plaintiff into believing that Plaintiff would be able to convert its Convertible Promissory Notes into freely trading common stock, after the six month holding period prescribed by Rule 144 applicable to reporting companies under Rule 144(d)(1), and to recover and likely profit from such investment by reselling all or part of such conversion shares into a liquid public marketplace for such shares. In fact, Defendants had a present intention to file a Form 15 only days later, which

they knew would render Rule 144 inapplicable to the conversion shares and thus render the conversion shares not marketable.

41.     Defendants, and each of them, knew that Defendant Bleier and Defendant Jacobson, together and individually, controlled the decision of whether or not to file a Form 15, and knew that Plaintiff would reasonably rely on their representation that no Form 15 was intended to be filed; and their verbal promise that they would not file a Form 15 at any time while Plaintiff's notes were outstanding.

42.      Each misstatement was made with scienter, knowing or with reckless disregard for the true facts, in connection with the purchase or sale of the above-referenced notes, which constitute securities under applicable federal security statutes.

43.     Plaintiff actually and reasonably relied on such misrepresentations by purchasing such notes, as alleged above, without knowing the true facts.

44.     Plaintiff's loss of all of its more than $300,000 investment in Hemp convertible notes was directly and proximately caused as a result of Plaintiff's reliance on such misrepresentations in deciding to make such investments.

45.     Plaintiff seeks and is entitled to recover his losses, according to proof at trial, plus interest and punitive and exemplary damages.

## FOURTH CLAIM FOR RELIEF

*Common Las Fraud and Deceit*

*Against all Defendants*

46.    Plaintiff realleges paragraphs 1 through 18, inclusive.

47.    Plaintiff alleges that Defendants, and each of them, made the alleged material misrepresentations to Plaintiff, as detailed above.

48.    Plaintiff alleges that Defendants, and each of them, made such misrepresentations purposefully as part of a scheme to mislead and defraud Plaintiff into believing that Plaintiff would be able to convert its Convertible Promissory Notes into freely trading common stock, after the six month holding period prescribed by Rule 144 applicable to reporting companies under Rule 144(d)(1), and to recover and likely profit from such investment by reselling all or part of such conversion shares into a liquid public marketplace for such shares. In fact, Defendants had a present intention to file a Form 15 only days later, which they knew would render Rule 144 inapplicable to the conversion shares and thus render the conversion shares not marketable.

49.    Defendants, and each of them, knew that Defendant Bleier and Defendant Jacobson, together and individually, controlled the decision of whether or not to file a Form 15, and knew that Plaintiff would reasonably rely on their representation that no Form 15 was intended to be filed; and their verbal promise

that they would not file a Form 15 at any time while Plaintiff's notes were outstanding.

50.    Each misstatement was made with scienter, knowing or with reckless disregard for the true facts, in connection with the purchase or sale of the above-referenced notes, which constitute securities under applicable federal security statutes.

51.    Plaintiff actually and reasonably relied on such misrepresentations by purchasing such notes, as alleged above, without knowing the true facts.

52.    Plaintiff's loss of all of its more than $300,000 investment in Hemp convertible notes was directly and proximately caused as a result of Plaintiff's reliance on such misrepresentations in deciding to make such investments.

53.    Plaintiff seeks and is entitled to recover his losses, according to proof at trial, plus interest and punitive and exemplary damages.

## **FIFTH CLAIM FOR RELIEF**

*Negligent Misrepresentation*

*Against all Defendants*

54.    Plaintiff realleges paragraphs 1 through 18, inclusive.

55.    Plaintiff alleges that Defendants, and each of them, made the alleged material misrepresentations to Plaintiff, as detailed above.

56.     Plaintiff alleges that Defendants, and each of them, made such misrepresentations purposefully or without any reasonable basis for believing such statements to be true.

57.     Defendants, and each of them, knew that Defendant Bleier and Defendant Jacobson, together and individually, controlled the decision of whether or not to file a Form 15, and knew that Plaintiff would reasonably rely on their representation that no Form 15 was intended to be filed; and their verbal promise that they would not file a Form 15 at any time while Plaintiff's notes were outstanding.

58.     Plaintiff actually and reasonably relied on such misrepresentations by purchasing such notes, as alleged above, without knowing the true facts.

59.     Plaintiff's loss of all of its more than $300,000 investment in Hemp convertible notes was directly and proximately caused as a result of Plaintiff's reliance on such misrepresentations in deciding to make such investments. Plaintiff seeks and is entitled to recover his losses, according to proof at trial, plus interest.

WHEREFORE, Plaintiff prays for a judgment in his favor, and against the Defendants, as follows:

1.  On the first and second claims for relief against Hemp for breach of the convertible promissory notes, an award of principal, interest,

compensatory damages and other relief prescribed by the notes,

including attorneys' fees and costs, in excess of $300,000, and

such other relief as the court deems just;

2. On the third and fourth claims for relief based on securities fraud

and common law fraud, against all Defendants, jointly and

severally, an award of compensatory, punitive and exemplary

damages, and such other relief as the Court deems just.

3. On the fifth claim for relief based on negligent misrepresentation,

against all Defendants, jointly and severally, for compensatory

damages, and such other relief as the Court deems just.

Dated:  December 2, 2019                    CORRIGAN & MORRIS, LLP

By:  /S/ Stanley C. Morris
Stanley C. Morris (SM-5814)
Corrigan & Morris LLP
12300 Wilshire Boulevard, Suite 210
West Los Angeles, CA 90025
(310) 394-2828 Tel.
(310) 394-2825 Fax